Jacob M. Polakoff, Bar No. 035832006
jpolakoff@bm.net
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel. 215.875.3000
Fax 215.875.4604

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Joshua S. Saylor, individually and as a representative of the classes, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** <br> **DEMAND FOR JURY TRIAL** |
| v. | |
| RealPage, Inc., | |
| Defendant. | |

Joshua S. Saylor ("Plaintiff"), who resides at 273 Millbridge Rd., Clementon, New Jersey 08021, by and through his attorneys, on behalf of himself, and the consumer Class set forth below, brings this Class Action Complaint against RealPage, Inc. ("Defendant" or "RealPage"), whose principal place of business is located at 2201 Lakeside Blvd., Richardson, Texas 75082, pursuant to the federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA") and its New Jersey state counterpart, N.J.S.A. § 56:11-28, *et seq.* ("NJ FCRA").

## INTRODUCTION

1. Recognizing that employers, lenders, and landlords use consumer reports to deny people jobs, credit, and housing, Congress has chosen to regulate the content and procurement of these reports through the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et. seq*.

2. Defendant RealPage, Inc., a large consumer reporting agency, has systematically

and willfully violated the FCRA and its New Jersey analogue by failing to use reasonable procedures to ensure the maximum possible accuracy of its reports.

3. Specifically, Defendant fails to take reasonable steps to ensure that its reports do not inaccurately identify people as sex offenders. Defendant routinely fails to consult either the United States Department of Justice's National Sex Offender Website or the online state sex offender searchable databases before falsely labeling consumers, including Plaintiff, as sex offenders.

4. Based on Defendant's pattern and practice of related violations, Plaintiff asserts FCRA and NJ FCRA claims on behalf of himself and the Classes set forth below. On behalf of himself and the Classes, Plaintiff seeks actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses, costs, and all available other appropriate relief.

## THE PARTIES

5. Individual and representative Plaintiff Joshua S. Saylor is a resident of New Jersey.

6. Plaintiff is a natural person and a "consumer" as defined by the FCRA and NJ FCRA.

7. Defendant RealPage, Inc. is a Delaware corporation and is headquartered in Richardson, Texas.

8. RealPage is a consumer reporting agency within the meaning of the FCRA and NJ FCRA, that provides background checks to landlords.

9. According to Defendant, it has "access to the industry's largest online criminal and sex offender database–almost twice as much data as leading competitors." https://www.realpage.com/apartment-marketing/resident-screening/ (last visited on June 13,

2019). This database is a proprietary database Defendant has cobbled together from a variety of sources—it is not a public database.

10. For monetary fees, RealPage engages in the practice of assembling information on consumers for the purpose of furnishing consumer reports to third parties. RealPage uses interstate commerce, including postal mail and the Internet, for the purpose of preparing and furnishing such reports.

11. The data and reports RealPage sells bears on the credit history, credit worthiness, reputation, personal characteristics and mode of living of the consumers that are subject of the reports.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over Plaintiff's claims under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's claim under the NJ FCRA under 28 U.S.C. § 1367. The Court further has jurisdiction over the NJ FCRA claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

13. The Court has personal jurisdiction over Defendant. Defendant conducts business in this District, including issuing consumer reports on residents in this District, and delivers them to prospective landlords and management companies in this District.

14. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATUTORY BACKGROUND

15. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite

their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

16. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

17. The FCRA was enacted based on Congress's finding that there is a "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

18. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure *maximum possible* accuracy of the information concerning the individual about whom the report relates" (emphasis added).

19. The NJ FCRA has an identical maximum possible accuracy requirement. N.J.S.A. § 56:11-32(b).

20. As described below, RealPage wholly disregarded its "grave responsibilities" with respect to Plaintiff's and class members' consumer reports.

## ALLEGATIONS RELATING TO PLAINTIFF

21. In 2018, Plaintiff started a graduate program seeking to obtain an advanced degree in Molecular Biology and Neuroscience at Rowan University Graduate School of Biomedical Sciences in Stratford, New Jersey.

22. Prior to starting his graduate program, Plaintiff applied to rent an apartment in Clementon, New Jersey in August 2018.

23. In connection with his application process for the apartment, SDK Millbridge

Gardens apartment community requested a consumer report about Plaintiff from Defendant.

24. On or around August 21, 2018, Defendant prepared a consumer report regarding Plaintiff and furnished the report to SDK Millbridge Gardens for a fee.

25. The consumer report sold by Defendant was grossly inaccurate and defamed Plaintiff.

26. The report falsely portrayed Plaintiff as a registered sex offender in Indiana.

27. Defendant's report erroneously included information about an individual who shares Plaintiff's first and last name but who does not share Plaintiff's date of birth, middle name, or social security number ("Registered Sex Offender Joshua Saylor").

28. Plaintiff is not a registered sex offender.

29. Plaintiff has never lived in Indiana.

30. Defendant's report failed to match Plaintiff's exact name, "Joshua Seth Saylor," and his date of birth, to the sex offender registry information about registered Sex Offender Joshua Saylor in Indiana.

31. Despite the lack of a matching date of birth middle name, state of residence or social security number, Defendant reported that Plaintiff matched Registered Sex Offender Joshua Saylor on the Indiana Sex Offender Registry.

32. The U.S. Department of Justice maintains the National Sex Offender Website. http://www.nsopw.gov. This database allows the public to search through the sex offender "registries for all 50 states, the District of Columbia, U.S. territories, and Indian Country." *Id.*

33. Indiana also maintains a searchable online database.[1]

34. These easily accessible databases include sufficient information to exclude the

---

[1] http://www.icrimewatch.net/indiana.phps

5

Registered Sex Offender Joshua Saylor as a match to Plaintiff.

35. In a matter of minutes, Plaintiff was able to identify the flaw in Defendant's reporting. After reviewing the National Sex Offender Website and the Indiana online searchable database, it was apparent that Registered Sex Offender Joshua Saylor was 25 years old at the time of the report. Plaintiff was 26 years old. Further, the sex offender registry information contains a photograph of Registered Sex Offender Joshua Saylor and a description of several physical characteristics, including Registered Sex Offender Joshua Saylor's hair and eye color and scars/tattoos. Besides sharing the same name first and last name, Registered Sex Offender Joshua Saylor has no middle name, and has blonde hair, blue eyes, and a Swastika tattooed on his buttocks.

36. Plaintiff has none of the physical characteristics that Registered Sex Offender Joshua Saylor has. Simply looking at Plaintiff's driver's license would have confirmed that Registered Sex Offender Joshua Saylor is a different individual than Plaintiff. Plaintiff was 26 years of age at the time of the report, and has brown hair and brown eyes.

37. In addition to the National Sex Offender Website providing sufficient data to exclude a match between Plaintiff and Registered Sex Offender Joshua Saylor, the underlying court records for Registered Sex Offender Joshua Saylor's offense also exclude such a match. Those records confirm that Plaintiff has a different date of birth than the Registered Sex Offender Joshua Saylor.

38. Defendant failed to consult either the National Sex Offender Website, the Indiana online searchable database, or the underlying court records before falsely labeling Plaintiff as a sex offender.

39. Defendant's failure to consult publicly available records was unreasonable, and

6

resulted in Plaintiff's report being inaccurate and defamatory.

40. Defendant does not go to the courthouse to obtain records or even consult with the relevant government entity to verify information when it prepares a report. Instead, Defendant buys its criminal information in bulk from third parties. This information contains incomplete personal identifiers, and does not include even basic publicly available information, such as dates of birth and physical descriptors.

41. Instead of engaging in further review, Defendant issued an inaccurate report stating that Plaintiff was a convicted sex offender on the Indiana Sex Offender Registry.

42. Because of Defendant's inaccurate reporting, Plaintiff lost the opportunity to lease the apartment of his choosing. Plaintiff was upset, embarrassed, and angry that he was mislabeled as a sex offender.

43. After Plaintiff provided them with additional information, SDK Millbridge Gardens was willing to disregard the inaccurate report it purchased and rent Plaintiff a different apartment.

44. In sum, Defendant's report on Plaintiff repeatedly and systematically violated the FCRA's and NJ FCRA's "maximum possible accuracy" mandate.

**ALLEGATIONS RELATING TO DEFENDANT'S BUSINESS PRACTICES**

45. Defendant's reports are created in a highly automated fashion using algorithms to link potential tenants to criminal records.

46. Defendant does not obtain its criminal record information directly from the courthouses. Instead, it buys data in bulk from criminal records vendors. Bulk data of public records information is often incomplete and missing key personal identifiers, like full dates of birth.

47. Defendant's reports undergo little, if any, manual review before they are released to a landlord. Indeed, RealPage touts that it "returns thorough results in about 30 seconds so you can move forward with the application process faster." https://www.realpage.com/apartment-marketing/resident-screening/.

48. Defendant employs loose matching criteria to match potential tenants with public records. Of the relevant personal identifying information, only Plaintiff's first and last name matched that of the sex offender.

49. RealPage has been sued previously by the Federal Trade Commission ("FTC") for FCRA violations due to its reporting practices because it used loose matching criteria to link potential tenants with criminal records, including records containing sex offender registry information. *FTC v. RealPage, Inc.*, No 3:18-cv-2737 (N.D. Tex.). RealPage paid $3 million, the largest civil penalty obtained by the FTC against a background screening company, to settle FTC claims alleging it failed to take reasonable steps to ensure the maximum possible accuracy of tenant screening information it includes in its consumer reports provided to its clients.

50. If Defendant had reasonable procedures to assure maximum possible accuracy, it would have determined that the sex offender record in Plaintiff's consumer report belonged to someone else.

51. Defendant did not consult with readily available online databases before accusing Plaintiff of being a convicted sex offender on the Indiana Sex Offender Registry. If it had, this serious error could have been avoided.

52. Instead, Defendant relied on static and incomplete information from a third-party public record vendor.

53. Further, if Defendant had obtained the underlying court records for the sex

offenses committed by Registered Sex Offender Joshua Saylor, Defendant could have obtained additional information, including the date of birth, allowing Defendant to determine that Joshua Saylor who was the subject on the Indiana Sex Offender Registry was a different person than Plaintiff.

54. Defendant did not consult the underlying court records before issuing its report.

55. If it had done any of these things, this serious error could have been avoided.

56. By relying on loose matching criteria and failing to cross-check its information against public records, Defendant systematically falsely labels people as sex offenders.

57. Defendant could have employed people to cross-reference its reports with publicly available online databases and court records in real time. Instead, RealPage chose to save money on production costs and run the risk of systematically issuing inaccurate reports.

58. Defendant's inaccurate reports have caused consumers to lose apartments or other housing, along with emotional distress, embarrassment and reputational harm.

59. Accordingly, Defendant has routinely and systematically willfully violated the FCRA and NJ FCRA.

## CLASS ACTION ALLEGATIONS

60. Plaintiff asserts his FCRA claims on behalf himself and as a representative of the **Inaccurate Reporting FCRA Class** defined as follows:

> All individuals who were the subjects of consumer reports furnished by RealPage in the two years predating the filing of this Complaint and continuing through the date the class list is prepared which identified the individual as being a sex offender where the date of birth of the consumer does not match the date of birth of the person associated with the sex offender record.

61. Plaintiff asserts his NJ FCRA claims on behalf himself and as a representative of the **Inaccurate Reporting NJ FCRA Class** defined as follows:

> All individuals who were the subjects of consumer reports while living in New Jersey furnished by RealPage in the six years predating the filing of this Complaint and continuing through the date the class list is prepared which identified the individual as being a sex offender where the date of birth of the consumer does not match the date of birth of the person associated with the sex offender record.

62. <u>Numerosity</u>: The Classes are so numerous that joinder of all class members is impracticable. RealPage is a large consumer reporting agency. Given the volume of RealPage's business, hundreds, if not thousands, of consumers fall within defined Classes.

63. <u>Typicality</u>: Plaintiff's claims are typical of the members of the Classes. Defendant typically reports inaccurate information. The FCRA and NJ FCRA violations suffered by Plaintiff are typical of those of the other class members, and Defendant treated Plaintiff consistent with other class members in accordance with its standard practices.

64. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Classes and has retained counsel experienced in complex class action litigation.

65. <u>Commonality</u>: Common questions of law and fact exist as to all members of the Classes and predominate over any questions solely affecting individual members, including but not limited to:

   a) Whether RealPage uses reasonable procedures to ensure maximum possible accuracy in reporting consumers as sex offenders;

   b) Whether RealPage's violations of the FCRA and NJ FCRA were willful;

   c) The proper measure of damages; and

   d) The proper measure of punitive damages.

66. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because

Defendant's policies and procedures apply generally to the class that final injunctive or declaratory relief is appropriate.

67. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA and NJ FCRA. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

## COUNT I
## 15 U.S.C. § 1681e(b)
### *Asserted on Behalf of Plaintiff and the Inaccurate Reporting FCRA Class*

68. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

69. By erroneously reporting Plaintiff and Inaccurate Reporting FCRA Class members as sex offenders, Defendant violated the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in its consumer reports. *See* 15 U.S.C. § 1681e(b).

70. The foregoing violations were negligent and/or willful. Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other Inaccurate Reporting FCRA Class members under 15 U.S.C. § 1681e(b). In addition to the conduct set

forth above, RealPage's willful conduct is reflected by, *inter alia*, the following:

    a. The FCRA was enacted in 1970. RealPage has had years to become compliant;

    b. RealPage is a corporation with access to legal advice through its own general counsel's office and outside counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

    c. Despite being previously sued by the FTC for falsely labeling consumers as sex offenders, RealPage did not systematically review public databases to ensure the accuracy of its reports with regard to labeling people as sex offenders;

    d. RealPage knew or had reason to know that its conduct was inconsistent with FTC guidance, caselaw, and the plain language of the FCRA;

    e. RealPage voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

    f. RealPage knew that matching individuals using name only would result in false positives. However, it persisted in doing so;

    g. RealPage's violations of the FCRA were negligent, and/or willful, and were repeated and systematic.

71. Plaintiff and the Inaccurate Reporting FCRA Class are entitled to actual damages and/or statutory damages of not less than $100 and not more than $1,000 for each and every violation and are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. §§ 1681n,o. Plaintiff and the Inaccurate Reporting Class are also entitled to punitive damages pursuant to 15 U.S.C. § 1681n(a)(2).

## COUNT II
### N.J.S.A. § 56:11-32(b)
*Asserted on Behalf of Plaintiff and the Inaccurate Reporting NJ FCRA Class*

72. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs.

73. By erroneously reporting Plaintiff and Inaccurate Reporting NJ FCRA Class members as sex offenders, Defendant violated the FCRA by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in its consumer reports. *See* N.J.S.A. § 56:11-32(b).

74. The foregoing violations were negligent and/or willful. Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other Inaccurate Reporting NJ FCRA Class members under N.J.S.A. § 56:11-32(b). In addition to the conduct set forth above, RealPage's willful conduct is reflected by, *inter alia*, the following:

   a. The NJ FCRA was enacted in 1997. RealPage has had years to become compliant;

   b. RealPage is a corporation with access to legal advice through its own general counsel's office and outside counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

   c. Despite being previously sued by the FTC for falsely labeling consumers as sex offenders, RealPage did not systematically review public databases to ensure the accuracy of its reports with regard to labeling people as sex offenders;

   d. RealPage knew or had reason to know that its conduct was inconsistent with FTC guidance, caselaw, and the plain language of the NJ FCRA;

&#x20;&#x20;&#x20;&#x20;&#x20;e. RealPage voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

&#x20;&#x20;&#x20;&#x20;&#x20;f. RealPage knew that matching individuals using name only would result in false positives.  However, it persisted in doing so;

&#x20;&#x20;&#x20;&#x20;&#x20;g. RealPage's violations of the NJ FCRA were negligent, and/or willful, and were repeated and systematic.

75. Plaintiff and the Inaccurate Reporting NJ FCRA Class are entitled to actual damages and/or statutory damages of not less than $100 and not more than $1,000 for each and every violation, injunctive relief, punitive damages, and are further entitled to recover their costs and attorneys' fees pursuant to N.J.SA. 56:11-38-39.

## PRAYER FOR RELIEF

76. WHEREFORE, Plaintiff, on behalf of himself and the Classes, prays for relief as follows:

&#x20;&#x20;&#x20;&#x20;&#x20;a) determining that this action may proceed as a class action under Fed. R. Civ. P. 23;

&#x20;&#x20;&#x20;&#x20;&#x20;b) designating Plaintiff as representative for the Classes and designating Plaintiff's counsel as counsel for the Classes;

&#x20;&#x20;&#x20;&#x20;&#x20;c) issuing proper notice to the Classes at Defendant's expense;

&#x20;&#x20;&#x20;&#x20;&#x20;d) issuing appropriate injunctive relief;

&#x20;&#x20;&#x20;&#x20;&#x20;e) declaring that Defendant committed multiple, separate violations of the FCRA and NJ FCRA;

&#x20;&#x20;&#x20;&#x20;&#x20;f) declaring that Defendant acted willfully, in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA and NJ FCRA;

&#x20;&#x20;&#x20;&#x20;&#x20;g) awarding actual, statutory and punitive damages as provided by the FCRA and NJ FCRA;

&#x20;&#x20;&#x20;&#x20;&#x20;h) awarding reasonable attorneys' fees and costs as provided by the FCRA and

      NJ FCRA; and

i) granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR A JURY TRIAL

77. Plaintiff, pursuant to Fed. R. Civ. P. 38(b), demands a trial by jury.

      Respectfully Submitted,

Date: June 14, 2019        /s/Jacob M. Polakoff
Jacob M. Polakoff, Bar No. 035832006
jpolakoff@bm.net
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel. 215.875.3000
Fax 215.875.4604

E. Michelle Drake*
emdrake@bm.net
John G. Albanese*
jalbanese@bm.net
BERGER MONTAGUE PC
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel. 612.594.5999
Fax 612.584.4470
**pro hac vice* forthcoming*

*Attorneys for Plaintiff*

## Civ. Rule 11.2 CERTIFICATION

The undersigned certifies, under penalty of perjury, pursuant to Civ. Rule 11.2, that the matter in controversy in the foregoing Class Action Complaint is not the subject of any other action pending in any court, arbitration forum, or administrative proceeding.

Date: June 14, 2019        /s/Jacob M. Polakoff
Jacob M. Polakoff, Bar No. 035832006
jpolakoff@bm.net

BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel. 215.875.3000
Fax 215.875.4604

E. Michelle Drake*
emdrake@bm.net
John G. Albanese*
jalbanese@bm.net
BERGER MONTAGUE PC
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel. 612.594.5999
Fax 612.584.4470
**pro hac vice* forthcoming

*Attorneys for Plaintiff*

16